UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES TROIANO, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 05-16-P-S |
| | ) | |
| | ) | Civil No. 08-161-P-S |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |

**RECOMMENDED DECISION ON 28 U.S.C § 2255 MOTION**

James Troiano pled guilty to a one-count indictment for interference with commerce by robbery. Troiano was sentenced to a 151-month term of imprisonment based on his status as a career offender. He has filed a 28 U.S.C. § 2255 motion pressing three grounds. In the motion he describes the conduct leading up to his federal conviction thusly: "I bandaged my head, hands & face & put ketchup on the bandages. I pedaled my childs bike to CVS in Bath Maine in attempt to get Oxycontin & Fentnyl patches to avoid withdrawal symptoms. I took 3 bottles of methylpnedate from pharmacy." Troiano appealed to the First Circuit Court Appeal without success. Treating each of his three claims as ineffective assistance of counsel claims,[1] I recommend that the Court deny Troiano § 2255 relief.

**Discussion**

*Prosecution Version*

The Prosecution Version of Troiano's offense reads:

[O]n about October 9, 2004, Defendant entered the CVS Pharmacy in Bath,

---

[1] Addressing the claims in this fashion can only benefit Troiano because any straight-up challenges are properly pressed in a direct appeal. See David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).

Maine dressed in a disguise of bandages around his head, face and hands. He approached the pharmacy counter and passed a note to Shannon Grady, who was at the cash register. Grady read the note and then passed it to pharmacist Eric Morse. The note read:
> GIVE ME ALL OXYCOTIN 80'S 40'S 20'S AND FETNAL PATCHS NOW!
> I HAVE A GUN!
> I WILL USE IT!

At the time, Defendant was armed with a pellet gun that Morse could see and thought was a real firearm. Morse then went to the safe where the narcotics are kept, but had difficulty because he was filling in at the Bath store that day and was unfamiliar with that particular safe. Defendant became inpatient, demanding repeatedly that Morse "hurry up!" As Morse continued to fumble with the safe, Defendant jumped over the pharmacy counter and moved towards the safe. Just as Morse was able to open the safe, Defendant reached inside and grabbed several bottles of medicine and ran out of the store. Defendant was apprehended outside the store by officers from the Bath Police Department as he attempted to get away.

The three bottles Defendant took from the pharmacy by force contained a total of approximately 1,420 milligrams of methylphenidate (a/k/a ritalyn), a controlled substance belonging to the CVS Corporation. At the time, CVS was a business engaged in interstate commerce and was operating in an industry that affects interstate commerce.

(Crim. No. 05-16-P-S, Doc. No 29.)

A.   **Ineffective Assistance Standard**

The First Circuit summarizes the standard for analyzing ineffective assistance claims stemming from a federal prosecution as follows:

> "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In order to prevail, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In other words, a defendant must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting therefrom. …
> Although the Supreme Court in Strickland discussed the performance prong of an ineffectiveness claim before the prejudice prong, the Court made clear that "there is no reason for a court deciding an ineffective assistance claim to approach the

2

>   inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. As the Court noted: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.
>   ….
>   We are mindful that, in evaluating the prejudice suffered by a defendant as a result of his counsel's alleged deficient performance, we must consider the "totality of the evidence before the judge or jury." Id. A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Id. at 696; see also Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir.1999) (noting that "[i]t is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied"); Reed v. Norris, 195 F.3d 1004, 1006 (8th Cir.1999) (finding it impossible for the defendant to establish prejudice where the evidence of his guilt was overwhelming); Bieghler v. McBride, 389 F.3d 701, 707 (7th Cir.2004) (finding no prejudice where overwhelming evidence pointed to the defendant's guilt).

United States v. De La Cruz, 514 F.3d 121, 140-41 (1st Cir. 2008).

With respect to Troiano's three grounds, I emphasize three tenants of 28 U.S.C. § 2255 review. First: "Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689). Second, "counsel was under no obligation to raise meritless claims. Failure to do so does not constitute ineffective assistance of counsel." Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (citations omitted). And, third, "when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's [criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

*Troiano's Three 28 U.S.C. § 2255 Grounds[2]*

The first of Troiano's three 28 U.S.C. § 2255 grounds complains that his lawyer did not emphasize Troiano's loss of reasoning ability at the time of the offense. He explains:

> Although I pleaded guilty I was not really responsible for my actions due to what I realize was a dissociative mental state brought on by consuming to[o] many prescription medications. Prior to the offense I had become very depressed and touchy from bipolar mood swings. I was getting only four hours of sleep [at] night. This may not have happened if my meds for my mood swing hadn't been discontinued. Had the judge been more fully informed of my past mental health history and my loss of control over my reasoning ability & physical actions he may have been more lenient.

(Sec. 2255 Mot. at 5.) The characterization of this argument most favorable to Troiano is that his attorney should have pressed the Court for a downward departure on the basis of his mental state.

United States Sentencing Guideline § 5K2.13 provides:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

---

[2] The United States has briefed its response to Troiano's grounds as if he was asserting that he was not competent to plead guilty and that he might have been able to demonstrate that he was not guilty by reason of insanity. I appreciate the argument on this score and I agree with its analysis that these claims would have no merit based on the reality of Troiano's crime, the evidence of his state of mind, and the associated risk of the increased sentencing exposure in taking this approach to the case. (See Gov't Opp'n Mem. at 20-23.) I do not think that the motion filed by Troiano raises these claims.

U.S.S.G. § 5K2.13.

The Pre-sentencing Investigation Report (PSI) does reflect Troiano's attorney's intent to "move the Court for a downward departure pursuant to the guidelines on the basis of Troiano's past history of drug addiction." (PSI at 15.) In a 19-page sentencing memorandum counsel argued at length that Troiano should not be sentenced as a career offender, that his criminal history was overstated, and that under 18 U.S.C. § 3553 factors the Court should take into consideration "other significant mitigating factors." (Crim. No. 05-16, Doc. 40.) In this memorandum Troiano's attorney included the following argument apropos the nature of the offense:

> After succumbing to the influence of drugs, Mr. Troiano wrongfully attempted to obtain more at the subject CVS pharmacy. See PSR, Part A, ¶7. His step-son had been in a life threatening car accident and was prescribed OxyContin for pain associated with his injuries. Id. Mr. Troiano's step-son shared his prescription medication with Mr. Troiano. Id. By the date of the accident Mr. Troiano had become severely addicted to the OxyContin. Id. The evening before the accident he took 6 Xanax pills and ½ bottle of liquid Vicodin. Id. The morning of the accident there weren't any more drugs available, and as a result of his addiction he needed more. At that point, out of desperation, he committed the subject offense at the CVs pharmacy.
> Unfortunately, Mr. Troiano did not have the strength, foresight or good judgment to refuse to engage in the criminal misconduct. Although Mr. Troiano possessed a BB gun during the offense, he did not use the gun and no one was injured during the robbery. PSR, Part A, ¶5. In addition, a small amount of drugs was taken from the pharmacy, and retrieved from Mr. Troiano from law enforcement soon after. PSR, Part A, ¶4. Although the offense of robbery by its very nature is a crime of violence, the overall circumstances of the offense committed by Mr. Troiano warrant consideration by the Court, demonstrating that the prescribed punishment as outlined by the PSR is overstated and unjustified.

(Id. at 14-15.) He further argued with regards to the history and character of the defendant:

> Most, if not all, of the offenses he committed were under the influence of drugs, or in furtherance of obtaining more drugs to sustain his addiction. In fact, the offenses committed in the instant case were committed while Mr. Troiano was under the influence of powerful prescription medication. See PSR, Part A, ¶7.

> Despite being mentally and physiologically addicted to drugs throughout his life and at the time of the offense, Mr. Troiano has taken responsibility for his actions, by pleading guilty and openly discussing the charged offense, past criminal behavior, and drug use with probation. See PSR, Part A, ¶7. By doing so, Mr. Troiano has recognized the seriousness of the crimes he has committed.
> Unfortunately, despite the fact that drug addiction has taken hold, Mr. Troiano has never received sufficient treatment necessary to defeat his psychological and physical addictions. In determining the appropriate sentence in this case, careful consideration should be given to Mr. Troiano's drug problems. As was the case in Woodley,[3] mentioned above, recognizing that Mr. Troiano is still salvageable, the Court has an opportunity to fashion a sentence that does more than simply punish the defendant in this case. Based on the fact that Mr. Troiano's drug addiction has fueled his criminal misconduct, if he receives the appropriate treatment and counseling for his addiction, it is unlikely that he will engage in criminal behavior ever again.

(Id. at 15-16.)

Given the clear directive of U.S.S.G. § 5K2.13 that the voluntary use of drugs or other intoxicants bars the downward departure, Troiano's attorney was well within the Strickland performance parameters in making the above cited arguments seeking leniency because of the influence of the drug use on his client.[4]  See Knight, 447 F.3d at 15; Acha, 910 F.2d at 32.

Second, Troiano argues that a psychiatric rather than a psychological evaluation should have been done. (Id. at 6.)  He speculates that a psychiatric evaluation would have emphasized his dissociative state as a consequence of his taking 1 pint of liquid Vicodin, ingesting 40 milligrams of Oxycontin, applied a 175 milligrams of Fentanyl patch, taking six blue Xanax tablets, and consuming a 100 milligram Seroquel tablet. (Id.)  He adds that his mother requested a psychiatric evaluation but his attorney told her that it would be charged to her and she did not have the money to pay for it. (Id. at 7.)  This argument simply provides no basis for concluding that the use of a psychiatrist rather than a psychologist would have made a difference in his

---

[3] United States v. Woodley, 344 F.Supp.2d 274 (D. Mass. 2004).
[4] Even the prosecutor commended Troiano's attorney for his argument on the § 3553 factors during the sentencing hearing.  (Sentencing Tr. at 30.)

criminal proceeding either with regards to the decision to plead guilty or in his sentencing. See David v. United States, 134 F.3d 470, 478 (1st Cir. 1998) ("To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings.").

Finally, Troiano asserts that neither his mother nor his sister was allowed to discuss his full psychiatric history at sentencing. (Id. at 8.) He opines:

> Although both my sister and my mother were called to testify they were informed by [his attorney] that it would hurt the outcome if they discussed my full psychiatric history and that he would take them off the stand if they did. My mother is a psychiatric nurse and a credentialed addiction counselor. My sister is a credentialed addiction counselor.

(Id.) He further explains that his attorney advised him that discussing his psychiatric history would open up the court proceedings to the current psychological evaluation which he thought would be unfavorable. (Id.)

Troiano's mother and sister did testify at the sentencing at some length. (Sentencing Tr. at 13-19; id. 20-27.) This is a recommended decision to the sentencing judge who can rely on his first-hand familiarity with Troiano's criminal proceedings in weighing the merits of Troiano's claim, see McGill, 11 F.3d at 225. There is no indication from this Court's explanations of the sentence at the sentencing hearing, (Sentencing Tr. at 38- 44) that further discussion of Troiano's psychiatric condition would have persuaded the Court to impose a lesser sentence. In particular I note the following discussion:

> I have listened very carefully to his family, and Mr. Troiano, you are a very fortunate person to have in court at a considerable emotional expense of a family who would come here and speak for you. Many families with less provocation have washed their hands of someone and said they are simply hopeless. You are a very fortunate person.
> What worries me is that you had so many chances to straighten yourself out and not only have you failed to do so but you have engaged in conduct, these

7

>       robberies, that are every bank teller's nightmare or every pharmacist's nightmare to have somebody with a gun standing in front of them to turn over the money or turn over the drugs or else.  I can't imagine many things worse for a person in an innocent position to have someone show up and threaten them.
>       I looked at the nature and circumstances of this offense, and I will note the issues that are particularly important to me and I think the circumstances of this offense are severe.
>       Your record is severe, the seriousness of the offense is severe and I'm looking at two offenses now where the public are seriously in danger.
>       I also see the need to avoid unwarranted sentence disparity for people with your record and your type of offense.
>       In my view the minimum sentence in this case, 151 months, is a long sentence but I have to say honestly that you probably earned it based on your extensive criminal history, the nature of your criminal history and the need to protect the public.

(Id. at 43-44.)

## *Conclusion*

For the reasons above, I recommend that the Court deny Troiano 28 U.S.C. § 2255 relief.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

September 5, 2008.

                              /s/Margaret J. Kravchuk
                              U.S. Magistrate Judge